Filed 12/21/21  P. v. Williams CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>PAMELA LYN WILLIAMS,<br><br>        Defendant and Appellant. | F079846<br><br>(Stanislaus Super. Ct. No. 1458764)<br><br><br>**OPINION** |

        APPEAL from an order of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

        Allan E. Junker, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jennifer Oleska, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant and defendant Pamela Lyn Williams was convicted of robbery in 2014 and sentenced to a second strike term of 12 years in prison, which included a five-year term for a prior serious felony conviction enhancement (Pen. Code, §667, subd. (a)).[1]

In 2019, while defendant was serving her prison term, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) sent a letter to the Superior Court of Stanislaus County pursuant to section 1170, subdivision (d), and recommended recall and resentencing in defendant's case because the court now had discretion to dismiss the prior serious felony enhancement based on legislation enacted after her sentencing hearing. The superior court declined to recall her sentence.

On appeal, defendant argues the court abused its discretion because it improperly focused on her criminal history and failed to consider evidence of her good behavior in prison. We find the court did not abuse its discretion and affirm.

## FACTS[2]

On April 22, 2013, at about 6:00 p.m., the victim and his friend entered a gas station store in Modesto. As they did, they noticed defendant sitting in the driver's seat of a car with three men standing around her open window. In the store, the victim bought two cans of beer, and then he and his friend left and walked past defendant's car. Defendant asked the victim what was going on and where the weed was. The victim said he was really busy and had to go.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] On December 3, 2019, defendant filed a motion for this court to take judicial notice of the nonpublished opinion in her first appeal, *People v. Williams*, May 12, 2016, F069913, because the trial court relied on this court's opinion when it declined to recall and resentence her. On January 3, 2020, this court granted defendant's motion to take judicial notice of this court's nonpublished opinion in her first appeal. The facts and some of the procedural history are from this court's opinion.

2.

The victim kept walking. Defendant raised her voice and repeatedly asked the victim why he was being so rude. The victim answered he was not being rude and was just in a hurry.

As the victim and his friend continued walking, defendant started the car and pulled directly in front of the victim. When he turned to walk the other direction, she backed up the car to stop him. Defendant then got out of the car and asked him why he was being so rude and what he had with him. She was aggressive and seemed irritated. She came five or six inches from his face and said, " ' "Give me what you got, I want to know what you got." ' " She started grabbing him, patting him down, and reaching into his pockets.

The victim feared for his safety. While cursing and screaming at him, defendant snatched his wallet out of his hand, took his keys out of his jacket pocket, and grabbed the grocery bag containing the two beers he had just bought. She got back in the car and drove back toward the gas station.

At some point, she entered the gas station store and disposed of the victim's wallet behind a candy display. The wallet was recovered. When officers searched defendant's car, they found the victim's keys and two beers. (*People v. Williams*, *supra*, F069913, at pp. 2–3.)

## CONVICTIONS AND SENTENCE

On January 30, 2014, after a jury trial, defendant was convicted of second degree robbery (§ 211). The court found true that defendant had one prior strike conviction for robbery in 2001, one serious felony conviction enhancement, one prior prison term enhancement (§ 667.5, subd. (b)), and one on-bail enhancement (§ 12022.1).

**Defendant's request to dismiss the prior strike conviction**

Defendant requested the court dismiss her prior strike conviction for robbery in 2001, when she was placed on probation for three years. Defendant argued the 2001 strike was remote in time, her other convictions were for theft and drug offenses that

3.

were not serious or violent, and the current robbery offense did not include any violence, threats, or weapons.  (*People v. Williams*, *supra*, F069913, at p. 5.)

The People filed opposition that included details of defendant's prior strike conviction for burglary in 2001:  " 'Defendant and two other subjects forcibly entered the victim's residence by kicking open the front door to the residence.  Once inside the residence Defendant had her hand in her jacket pocket mimicking holding a gun and told the victim, "I'm gonna kill you bitch if you don't give me your shit."  As the other two subjects proceeded to go through the victim's residence and collect items to steal, Defendant pinned the victim down and punched the victim in the face several times.  The officer noticed the victim had several bumps and bruises around the areas where the victim said Defendant punched her.' "  (*People v. Williams*, *supra*, F069913, at p. 6.)

Defendant's criminal history after the 2001 strike conviction consisted of a misdemeanor conviction for assault (§ 240) in 2002; sentenced to four years for first degree burglary (§ 459) in 2003; a misdemeanor conviction for driving under the influence (Veh. Code, § 23152) in 2007; sentenced to two years for another burglary conviction plus felony petty theft with a prior conviction in 2007; and sentenced to 16 months for felony possession of stolen property (§ 496) in 2010.  At the time of her sentencing hearing, she also had pending cases for felony petty theft with a prior offense, committed in 2012 and 2013; felony possession of a controlled substance (Health & Saf. Code, § 11377), committed in 2013; and felony possession of a controlled substance in prison (§ 4573.6), committed in 2013.  (*People v. Williams*, *supra*, F069913, at p. 5.)

The People argued that defendant had a long and continuous criminal record dating back to the 2001 strike conviction; she was convicted of four additional felonies with prison sentences after the strike offense; she was also convicted of two misdemeanors, including driving under the influence and assault; and she had four currently pending felony cases, some of which occurred since she committed the current robbery conviction.  Defendant had been in and out of prison, led a continuous life of

4.

crime, and her continued criminal conduct showed she was unwilling or unable to refrain from illegal conduct for any significant time.[3]  As for the current offense, the People argued defendant's conduct involved violence because she forcibly snatched the victim's wallet, keys, and groceries from the victim's hands and pocket.  (*People v. Williams*, *supra*, F069913, at pp. 5–6.)

**Sentencing hearing**

On July 14, 2014, the court denied defendant's motion to dismiss the prior strike conviction.

> " 'All right.  Well, the Court had considered the motion by [defense counsel], and, you know, the Court did hear the evidence in this case.
>
> " … When [the] Court considers a motion to strike a strike, I think looking at the facts of the case are important.  But also looking at the defendant's prior criminal history and what the strike is for is very important.
>
> " 'This case is a robbery case, the fact that we – the facts that we tried here.  Well, you know, the Court has certainly seen more serious robbery cases where people have used more force, more violence and in this case, though, the charge is still robbery, and [defendant] was found guilty of the robbery charge.  The strike offense that was proven here and the strike offense that we have before us is from 2001.  So it is – it is older.  It's some 13 years older.  It is a robbery.  I mean, so it's – while defendant did receive probation in that case, it's still a very similar type offense.
>
> " 'Also, in looking at the defendant's criminal history, you can say that, well, gee, it's a real old offense, but if a person's been in and out of trouble or been in custody most of the time, a good portion of that time, it's not really that old of an offense.  I mean, if someone commits an offense and is always in custody, then it doesn't really add much to say it's an old offense.  I mean, you haven't been able to reoffend really, then.
>
> " 'As indicated by the People, [defendant] does have quite a history here of continuing law violations and continued illegal conduct.  And so much of this conduct includes theft offenses.

---

[3] Defendant did not object to or challenge the accuracy of the People's factual description of her criminal history or of her 2001 robbery, either in the trial court or on appeal.  (*People v. Williams*, *supra*, F069913, at p. 6, fn. 4.)

" 'So while, [defense counsel], your Motion to Strike is very well-written and you argued as best you can for your client, unfortunately, you can't change her criminal history, and you can't change that – those facts. I think it would be improper for this Court to strike the strike given [defendant's] criminal history here. And the People do point that out that, you know, [it would] almost be an abuse of discretion for the Court to do [that], because that's not the purpose of the Court's discretion in this Three-Strikes Law. The voters of this State wanted people to have more accountability when they have prior serious felonies in their record. And they give the Court the opportunity to strike those priors, but the Court has to use its discretion wisely, and I – I don't think that it would be [in the] interest of justice to strike the strike here given the continued criminal activity on the part of [defendant], and those are just the convictions here. Court's not even considering the fact that she has several other cases pending.' " (*People v. Williams*, *supra*, F069913, at pp. 6–7.)

The court sentenced defendant to an aggregate term of 14 years, based on the midterm of three years for robbery, doubled to six years as the second strike sentence, plus consecutive terms of five years for the prior serious felony enhancement, one year for one prior prison term enhancement, and two years for the on-bail enhancement. (*People v. Williams*, *supra*, F069913, at p. 2.)

**First appeal**

On May 12, 2016, this court affirmed the judgment. Defendant had argued the court abused its discretion when it denied her request to dismiss the 2001 prior strike conviction for robbery because it was remote in time, her subsequent offenses were theft and drug crimes, and she had "aged and matured considerably since the prior strike conviction, such that she is now significantly less likely to reoffend than in 2001. She claims the current offense did not involve assaultive contact or injury but was caused by the victim's rebuke of her attempt to befriend him. She suggests that, although she was found competent to stand trial, 'the recurrent air of doubt over her competency to stand trial evidences a history of mental illness which likely fueled her drug use and actions in this case.' " (*People v. Williams*, *supra*, F069913, at pp. 7–8.)

6.

This court held the trial court did not abuse its discretion when it declined to dismiss the prior strike conviction:

> "Indeed, defendant's arguments find no support in the record, but rely instead on her fictional version of the record. Contrary to her claim, she obviously has not matured enough since her 2001 conviction to prevent her from reoffending because she has in fact reoffended many times since then. Furthermore, the evidence did not support her version of the current offense – her benevolent overture of friendship, followed by a cruel rebuff in response, which caused her to become confrontational, but not assaultive or violent. According to the evidence, she aggressively pursued the victim, blocked his path with her car, physically assaulted him, and forcibly stripped him of his valuables. And finally, the record does not support defendant's claim of any current or historical mental illness. She was psychologically examined twice during this case, found mentally competent, and determined not to be mentally ill or have a history of mental illness…." (*People v. Williams*, *supra*, F069913, at pp. 8–9.)

"In sum, defendant's criminal record demonstrates she has no intention of reforming, and continues to pose a serious danger to the community. We cannot say she falls outside the spirit of the Three Strikes law. The trial court did not abuse its discretion in refusing to dismiss the prior strike conviction." (*People v. Williams*, *supra*, F069913, at p. 9.)

**Resentencing**

On October 12, 2016, the court held a resentencing hearing because the offense underlying defendant's on-bail enhancement had been reduced to a misdemeanor. The court again imposed the midterm of three years for robbery, doubled to six years as the second strike term, plus five years for the prior serious felony enhancement and one year for the prior prison term enhancement, for an aggregate term of 12 years.

## RECOMMENDATION FOR RECALL AND RESENTENCING

On June 13, 2019, the Secretary of the CDCR (Secretary) sent a letter to the Stanislaus County Superior Court to provide "the court with authority" to resentence defendant pursuant to section 1170, subdivision (d), that provides "upon

7.

recommendation" of the Secretary, "the court may recall a previously ordered sentence and commitment, and resentence the defendant in the same manner as if she had not previously been sentenced, provided the new sentence is no greater than the initial sentence."

The Secretary's letter stated that defendant was sentenced to prison in 2016 after her conviction for violating section 211, and her sentence was enhanced pursuant to section 667, subdivision (a)(1) with a consecutive five-year term for a prior serious felony conviction.

> "Courts were previously barred from striking prior serious felony convictions for purposes of enhancement under this section. However, effective September 30, 2018, courts are now authorized to exercise their discretion to strike prior serious felony convictions for purposes of enhancement under this section, or to strike the punishment for the enhancement under this section, pursuant to section 1385.

> "Having reviewed the attached documentation it appears that [defendant's] sentence warrants the attention of the court. Pursuant to section 1170, subdivision (d), as the Secretary, I recommend the inmate's sentence be recalled and that she be resentenced in accordance with the cited authority."

The Secretary's letter was accompanied by a preprinted CDCR form entitled "Frequently Asked Questions" about referrals for recall and resentencing; it was a general document and not specific to defendant. It stated that based on *In re Estrada* (1965) 63 Cal.2d 740, legislative changes that decrease criminal penalties are applied retroactively "to those cases not yet final on appeal. [Citation.] When a court accepts jurisdiction over an inmate's sentence pursuant to [a section] 1170[, subdivision] (d) resentencing recommendation, that case is again in the sentencing phase. Because the case is no longer final on appeal, it is therefore subject to all subsequently enacted retroactively changes in law."

The form further stated: "Aside from the statutory prohibition on sentencing an inmate to a longer term than that of the initial sentence, a court may resentence an inmate

8.

in any way that they could legally do if they were sentencing the inmate for the first time, including staying the punishment for a count or enhancement, or striking a count or enhancement in its entirety."

**Defendant's postconviction records**

The Secretary's letter was also supported by the following documents about defendant's postconviction conduct in state prison.

The "Rehabilitative Achievement Credit" document showed her attendance in "approved, positive self-help programs" in prison. In 2017, she attended the "Celebrate Recovery" program for 13.5 hours; two separate "Veterans Support Groups" for a total of five hours; and Narcotics Anonymous for a total of 20.75 hours.

There was a separate document for defendant's "Inmate Assignment History," that had "a detailed list of participation in work assignments and Milestone Completion Credit (MCC). "Assignments may include up to a full day of work, education, other programs, or a combination of any of the above."

Defendant's inmate assignment history listed her attendance at the following programs in 2017, initially at the Central California Women's Facility and then at Folsom State Prison: veterans support groups, college classes through Merced College, a porter assignment, vocational cosmetology, clothing room clerk, yard worker, and offender mentor for substance abuse. In 2018, she attended correspondence college, reentry preparation programs, anger management courses, and completed a five-month substance abuse program.

Finally, there was a CDCR document that stated defendant had no rule violations reports or disciplinary records since she was incarcerated.

**The court's decision not to recall and resentence**

On June 26, 2019, the superior court issued an order that summarily denied to act upon the Secretary's recommendation for recall and resentencing: "This Court received a letter from the Department of Corrections regarding resentencing authority. This Court

declines to exercise its authority to strike any priors or punishment as such would not be in the Interest of Justice in this case."

On July 15, 2019, defendant requested the court reconsider the denial of the recommendation, and the matter was placed on calendar.

On August 14, 2019, the court held a hearing on CDCR's letter; defendant was not present. The court invited argument, but the parties declined and submitted the matter. The court again declined to recall defendant's sentence.

> "I went to the Fifth District Court of Appeals opinion here where she made the request to strike the (d) prior, the serious felony prior. [¶] And it said: [¶] 'Defendant's criminal record demonstrates she has no intention of reforming and continues to pose a serious danger to the community. We cannot say she falls outside the spirit of the Three Strikes Law; so the trial court did not abuse its discretion in refusing to dismiss the strike prior.' [¶] So in light of that and in light of my knowledge of the case and the facts, her request is again denied. [¶] 5th DCA didn't have any problem."

On August 23, 2019, defendant filed a notice of appeal of the court's denial of the Secretary's recommendation to recall and resentence.

## DISCUSSION

On appeal, defendant argues the court abused its discretion when it declined to recall and resentence because it only considered her criminal record, it failed to consider her postconviction behavior in prison, and it should have considered "facts that arose after she was committed to serve the original sentence."

### *Section 1170 and Regulatory Provisions*

In general, a trial court loses jurisdiction to recall a defendant's sentence once execution of that sentence has commenced. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455 (*Dix*).) Section 1170, subdivision (d)(1) is an exception to that rule and authorizes the trial court to modify an inmate's sentence upon a recommendation from the Secretary of the CDCR to "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced …."

10.

(§ 1170, subd. (d)(1); *Dix, supra*, 53 Cal.3d at p. 455; *People v. Frazier* (2020) 55 Cal.App.5th 858, 863; *People v. McCallum* (2020) 55 Cal.App.5th 202, 210 (*McCallum*).)

Title 15 of the California Code of Regulations identifies the circumstances where the Secretary of the CDCR may recommend recall of an inmate's sentence and resentence her. (Cal. Code Regs., tit. 15, § 3076.1; *McCallum, supra*, 55 Cal.App.5th at p. 219, fn. 17.)[4] As relevant to this case, the Secretary may "recommend to a sentencing court that the sentence and commitment previously imposed on an inmate be recalled and the court resentence the inmate" under section 1170, subdivision (d)(1), when there is "*a change in sentencing law*" as provided in section 3076.1, subsection (d)(1). (§ 3076.1, subd. (a)(3), italics added.)

Section 3076.1, subdivision (d)(1), in turn, states an inmate may be considered for referral "if the applicable sentencing laws at the time of their sentencing hearing *are subsequently changed due to new statutory or case law authority with statewide application.*" (§ 3076.1, subd. (d)(1), italics added.)

An inmate's initial eligibility for consideration under the "change in sentencing law" provision "shall be determined by the Classification Services Unit or the Correctional Case Records Unit." (§ 3076.1, subd. (d)(3).) If the inmate is found eligible, the unit shall prepare a "Cumulative Case Summary" and refer the matter to the Secretary. (§ *Id.*, subd. (d)(3)(B).) The Cumulative Case Summary shall "include all of the following information," such as the inmate's commitment offense, a brief description of the crime, and the sentence; a summary of the inmate's sustained juvenile petitions and adult criminal convictions; active or potential holds, warrants, or detainers; institutional behavior, "including serious rules violation reports, drug test results, gang or disruptive

---

[4] All further references to section 3076.1 are to the provision in title 15 of the California Code of Regulations.

group information, placement score, current housing assignment, a summary of work and educational assignments, and participation in rehabilitative programs and self-help activities"; the inmate's visitor history; and victim notification requirements. (*Id.*, subd. (b)(3)(D)(1)–(10)).)

"If the Secretary elects *to recommend* an inmate for recall and resentencing, a recommendation letter and Cumulative Case Summary shall be forwarded to the sentencing court and a copy shall be provided to the inmate and another copy placed in the inmate's central file within 10 business days of the decision." (§ 3076.1, subd. (e)(2), italics added.) In addition, the Office of Victim and Survivor Rights and Services shall notify all victims registered with CDCR within a specific time period. (Cal. Code Regs. tit. 15, § 3076.5, subd. (a).)

### *The Superior Court's Discretion*

The Secretary's recommendation is not binding on the superior court, and the court has discretion to decide whether to recall the inmate's sentence and resentence him or her, and the statutory language for the court to decide whether to act upon the Secretary's recommendation is permissive and not mandatory. (*McCallum, supra*, 55 Cal.App.5th at pp. 213–214.) "In deciding whether to recall a sentence under section 1170, subdivision (d)(1), the trial court may exercise its authority 'for any reason rationally related to lawful sentencing.' [Citation.]" (*Id.* at p. 210.)

Subdivision (d)(1) of section 1170 was amended in 2018 (*McCallum, supra*, 55 Cal.App.5th at pp. 214–215), and added language that authorizes the court to consider "postconviction factors" in resentencing, "including, but not limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued

incarceration is no longer in the interest of justice." (§ 1170, subd. (d)(1); Assem. Bill No. 1812 (2017–2018 Reg. Sess.); Stats. 2018, ch. 36, § 17, eff. June 27, 2018.)

"[W]e read the inclusion of postconviction factors in section 1170, subdivision (d)(1), as providing guidance for the trial court's resentencing decision, *not its initial decision whether to recall the sentence.*" (*McCallum, supra,* 55 Cal.App.5th at p. 214, italics added.) The legislative history of the 2018 amendment describes it "as 'authoriz[ing] the courts to consider specific post-conviction factors *when resentencing a defendant.*' [Citation.]" (*Ibid.*)

Section 1170, subdivision (d)(1) has thus been interpreted to establish a two-step process. First, the trial court decides whether to recall the sentence. If it does so, the second step is to conduct a resentencing hearing, when it may consider the postconviction factors enumerated in the statute. (§ 1170, subd. (d)(1); *McCallum, supra,* 55 Cal.App.5th at pp. 214–215; *Dix, supra,* 53 Cal.3d at p. 463.)

"The Secretary's request for recall and resentencing pursuant to section 1170, subdivision (d)(1) … provides *no statutory entitlement to relief to the inmate even when the court credits the postconviction facts identified in the Secretary's recommendation materials.* [Citations.] [T]he Secretary's recommendation letter is but an invitation to the court to exercise its equitable jurisdiction. [Citation.] It furnishes the court with the jurisdiction it would not otherwise possess to recall and resentence; it does not trigger a due process right to a hearing [citation], let alone any right to the recommended relief. [Citation.]" (*People v. Frazier, supra,* 55 Cal.App.5th at p. 866, italics added.)

The 2018 amendment did not "alter the fact the trial court has discretion whether to recall and resentence the defendant." (*McCallum, supra,* 55 Cal.App.5th at p. 214.) Although the Secretary's recommendation vests the court with authority to recall the defendant's sentence, the recommendation "is but an invitation to the court to exercise its equitable jurisdiction. [Citation.]" (*People v. Frazier, supra,* 55 Cal.App.5th at p. 866.) Moreover, section 1170, subdivision (d)(1) "apparently does not require the court to

respond to the recommendation." (*Dix*, *supra*, 53 Cal.3d at p. 459, italics omitted, fn. omitted.) It "allows the sentencing court to recall and resentence at any time upon recommendation of [CDCR], but … it does not require the court to 'consider' any such recommendation. [Citation.]" (*Id.* at p. 459, fn. 13.)

"We review the trial court's decision whether to recall a defendant's sentence [under section 1170, subdivision (d)(1)] for an abuse of discretion. [Citations.] ' "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" ' [Citation.] The abuse of discretion standard "involves abundant deference" to the court's ruling.' [Citations.]" (*McCallum, supra*, 55 Cal.App.5th at p. 211; *People v. Frazier, supra*, 55 Cal.App.5th at pp. 863–864.)

*Analysis*

Defendant's aggregate sentence included a consecutive term of five years for the section 667, subdivision (a) prior serious felony enhancement. The Secretary's recommendation for recall and resentencing because of a "change in sentencing law" was based on amendments to sections 667, subdivision (a) and 1385, effective January 1, 2019, to allow a court the discretion whether to strike or dismiss a section 667, subdivision (a) prior serious felony enhancement for sentencing purposes. (*People v. Zamora* (2019) 35 Cal.App.5th 200, 208.) "… Senate Bill 1393 applies retroactively to all cases or judgments of conviction in which a five-year term was imposed at sentencing, based on a prior serious felony conviction, *provided the judgment of conviction is not final when Senate Bill 1393 becomes effective on January 1, 2019.*" (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971–972, 973, italics added.)

As a preliminary matter, the People assert the Secretary's letter was improper because the amendments to section 667, subdivision (a) and section 1385 are only

14.

retroactive to cases not yet final on appeal, and the amendments are not applicable to defendant's case because it was final long before the effective dates of the amendments. As explained above, while a trial court loses jurisdiction to recall a defendant's sentence once execution of that sentence has commenced, the provisions for recall and resentencing under section 1170, subdivision (d)(1), and the authorizing regulations, are exceptions to that rule. (*Dix, supra,* 53 Cal.3d at p. 455; *People v. Frazier, supra,* 55 Cal.App.5th at p. 863; *McCallum, supra,* 55 Cal.App.5th at p. 210.)

Defendant asserts the court abused its discretion because it only considered her criminal record, it failed to consider her postconviction behavior in prison, and it should have "facts that arose after she was committed to serve the original sentence." Defendant speculates that "great insight could be obtained from an evaluation of appellant's behavior while incarcerated. She may have performed differently than previously expected and/or may have altered certain behavior patterns which would induce the trial court in this case to exercise its newly conferred discretion – as proposed by CDCR – to strike the five-year prior serious felony enhancement." "In the instant matter, at a minimum the trial court must restate its reasons at resentencing in order to ensure that the judge based the new sentence on a current analysis of the relevant factors." The People respond the court was not required to consider defendant's postconviction behavior since it never recalled her sentence.

We first note the Secretary's recommendation for recall and resentencing was just that – a recommendation and not an order for the superior court to recall appellant's sentence, dismiss the prior serious felony enhancement, and resentence her to a shorter term. Section 1170, subdivision (d)(1) describes the court's ability to address such a recommendation in permissive rather than mandatory language. In addition, the Secretary's recommendation does not trigger a due process right to a hearing or even require the court to respond to the recommendation. (*Dix*, *supra*, 53 Cal.3d at p. 459; *People v. Frazier, supra,* 55 Cal.App.5th at p. 866; *McCallum, supra*, 55 Cal.App.5th at

15.

pp. 215–216.) While section 1170, subdivision (d)(1) allows the court to respond to the recommendation, "it does not require the court to 'consider' any such recommendation. [Citation.]" (*Dix, supra*, 53 Cal.3d at p. 459, fn. 13.)

In this case, the court did not abuse its discretion when it initially summarily denied the motion. However, the court granted defendant's request to place the matter on calendar, convened a hearing, and invited argument from the parties. The parties declined, and the court stated that it would not recall the sentence based on its recollection of the facts of the case, having presided over defendant's jury trial in 2014. It also cited this court's discussion of the findings it made when it denied defendant's request to dismiss the prior strike conviction at the original sentencing hearing and noted that this court found it did not abuse its discretion when it denied the request to dismiss the prior strike conviction.

As explained above, section 1170, subdivision (d) contemplates a two-step process, where the court first decides whether to recall the sentence; if it recalls the resentence, it then holds a sentencing hearing. At the resentencing hearing, the court may then consider the postconviction factors identified in section 1170, subdivision (d). (*McCallum, supra*, 55 Cal.App.5th at pp. 214–215.) Having decided not to recall the matter, the court did not reach the resentencing step and thus was not obliged to consider postconviction factors.

Moreover, the court did not abuse its discretion by considering the facts of the underlying robbery and defendant's criminal record at the time of the sentencing hearing, which included pending charges based on offenses allegedly committed after the robbery in this case. The court's findings show that it relied on the entirety of the record to decide not to recall defendant's sentence. The court's discretionary ruling was not "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) As for defendant's postconviction conduct, she did not have any history of disciplinary reports or actions, but her records were fairly

16.

minimal and represented enrollment in various programs, classes, and prison jobs, and there was no evidence addressing whether " 'circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice.' " (§ 1170, subd. (d)(1).)

Finally, defendant asserts the Secretary's inclusion of her prison records, showing her program participation and lack of any rules violations, indicates that the Secretary's recommendation for recall and resentencing was also based on an alternate reason authorized by section 1170, subdivision (d) and section 3076.1 – that she had displayed "exceptional conduct" while incarcerated.

As a separate statutory reason, the Secretary may recommend recall and resentencing "[w]hen an inmate demonstrates exceptional conduct," defined as "behavior while incarcerated [that] demonstrates sustained compliance with departmental regulations, rules, and requirements, as well as prolonged participation in rehabilitative programming." (§ 3076.1, subds. (a)(1), (b)(1).) In consideration of this factor, the Classification Services Unit shall determine the inmate's initial eligibility for consideration, and review "all referrals received from a Warden, the Director of the Division of Adult Institutions, or the Secretary," but it "shall not accept referrals from inmates or other parties on behalf of inmates" on this ground. (§ 3076.1, subd. (b)(3)(A) & (B).)

Defendant's claim that the Secretary's recommendation was also based on the "exceptional conduct" factor is not supported by the record and the applicable regulatory provisions. The Secretary's letter to the superior court only stated that its recommendation for recall and resentencing was based on the "change in sentencing law" provision, based on subsequent amendments to section 667, subdivision (a) and section 1385, that permitted the court to exercise its discretion to dismiss the five-year term for the prior serious felony enhancement.

17.

The Secretary's inclusion of defendant's records showing her participation in programs and lack of rules violation did not mean that the recommendation for recall and resentencing was based on the "exceptional conduct" factor.  Section 3076.1, subdivision (d)(3) requires CDCR to prepare the records of defendant's conduct in prison for both the "change in sentencing law" (§ 3076.1, subd. (d)(3)(B)) and "exceptional conduct" factors (§ 3076.1, subd. (b)(3)(D)), and the inclusion of these documents was also required for a recommendation based on the "change in sentencing law" factor.

## DISPOSITION

The court's order of August 14, 2019, that declined to recall and resentence defendant, is affirmed.


                                                                                          POOCHIGIAN, J.
WE CONCUR:


HILL, P. J.


DETJEN, J.


18.